**David N. Cohen**
Direct Dial: (973) 520-2362
E-Mail: Dcohen@eapdlaw.com

November 7, 2007

**VIA ELECTRONIC FILING**

Honorable Joseph A. Greenaway
United States District Court Judge
Martin Luther King Courthouse
50 Walnut Street, Room 2060
Newark, NJ  07101

      Re:    **C.R. Bard, Inc. v. Lexington Insurance Company**
              **Civil Action No.  2:07-cv-02547**

The Honorable Judge Greenaway:

This office represents defendant Lexington Insurance Company ("Lexington") in the above-referenced coverage dispute between Lexington, a commercial liability insurer, and C.R. Bard, Inc. ("Bard"), its insured.  On October 16, 2007, Magistrate Judge Arleo conducted the parties' initial Rule 16 conference, during which Lexington requested permission to file summary judgment against the plaintiff, Bard.  Pursuant to that request, Lexington sought a temporary stay of discovery until Lexington's proposed motion was decided.  Magistrate Arleo instructed Lexington that prior to the close of fact discovery, motions for summary judgment were not permitted absent leave of court from Your Honor.  Accordingly, Lexington respectfully requests Your Honor's permission to file summary judgment, pursuant to Fed. R. Civ. P. 56, on or before November 21, 2007.  Lexington further requests an order temporarily staying discovery until Lexington's proposed motion is decided.  As detailed below, Lexington submits that the issue this Court will be asked to resolve if leave is granted is purely one of law, namely, whether Lexington's Commercial Excess Liability Policy, Policy Number 7412134 ("the Policy"), provides coverage for claims against Bard arising out of Bard's alleged violations of state and federal antitrust laws.[1]

---

[1] Lexington did not raise this issue in a pre-answer motion to dismiss due to Lexington's interest in conducting a thorough investigation of its coverage obligations before proceeding with any dispositive motion.  As further explained below, the plaintiffs filed an amended class action complaint in the underlying action only two days before Lexington removed this case to this Court.  Lexington needed time to examine the coverage issue in light of the amended pleading.  Thus, as a result of Lexington's good faith effort to clarify its coverage position before advancing a dispositive motion, Lexington now seeks leave to file its motion for summary judgment.

Hon. Joseph Greenaway, J.S.C.
November 7, 2007
Page 2 of 6

**Underlying Antitrust Action**

On February 21, 2007, Southeast Missouri Hospital (the "Hospital") filed a class action complaint against Bard and others captioned, *Southeast Missouri Hospital, et al. v. C.R. Bard, Inc., et al.*, Case No. 1:07 CV 0031, in the United States District Court for the Eastern District of Missouri, Southeastern Division (the "Southeast Missouri Action"). The Hospital initially alleged four causes of action against Bard for violations of state and federal antitrust laws. On May 29, 2007, the Hospital filed a First Amended Class Action Complaint ("Amended Class Complaint"), asserting the following six causes of action against Bard: (1) Unreasonable Restraint of Trade, 15 U.S.C. § 1 (Sherman Act); (2) Monopolization, 15 U.S.C. § 2 (Sherman Act); (3) Exclusive Dealing, 15 U.S.C. § 14 (Clayton Act); (4) Violation of Missouri Fair Merchandising Practices Act, § 407.020 RSMo *et seq.*; (5) Violation of Missouri Antitrust law, § 416.031 RSMo *et seq.*; and (6) Civil Conspiracy.[2]

The basis of the Hospital's claims against Bard is as follows. The Hospital is a purchaser of Bard's urological catheters. It alleges that Bard, along with its co-defendant conspirators, "embarked upon an anticompetitive scheme to maintain their market power and preserve their monopoly profits." Amended Class Complaint at ¶¶ 42-44. Bard and its co-defendant, Tyco International (US), Inc. ("Tyco"), allegedly own over 90% of the aggregate U.S. market share for urological catheters and specifically embarked on an anticompetitive scheme to preclude competition from their competitors, including Rochester Medical Corporation ("Rochester").[3] Id. In furtherance of this scheme, Bard and Tyco allegedly entered into "illegal exclusive dealing and bundling arrangements with Group Purchasing Organizations ("GPOs") and Integrated Delivery Networks ("IDNs")."[4] Id. at ¶ 48. The Hospital alleges that Bard's entrance into multi-year exclusive contracts for the sale of its urological catheters by GPOs and IDNs to member hospitals effectively stifled Bard's competition, artificially inflated the price of catheters, and ultimately deprived GPO and IDN member hospitals – such as Southeast Missouri

---

[2] The Southeast Missouri Action is referenced in Paragraph 4 of Bard's declaratory judgment complaint in this action; however, a copy of the original complaint was not attached as an exhibit thereto. For the Court's convenience, Lexington has attached hereto (see Tab A) a copy of the presently styled Amended Class Complaint.

[3] Prior to the Southeast Missouri Action against Bard, Rochester filed its own civil antitrust action against Bard and Tyco in the United States District Court for the Eastern District of Texas, which has now settled. The Rochester action does not form the basis of Bard's present coverage action against Lexington.

[4] According to the Amended Class Complaint, GPOs and IDNs negotiate with medical equipment manufacturers and suppliers, such as Bard and Tyco, on behalf of member hospitals, including Southeast Missouri Hospital. Id. at ¶¶ 48-50.

Hon. Joseph Greenaway, J.S.C.
November 7, 2007
Page 3 of 6


Hospital – from the benefit of competitive pricing and technologically superior products. Id. at ¶¶ 56-67.  The nationwide class is defined as all persons or entities in the United States who directly purchased urological catheters produced, promoted, sold, marketed and/or distributed by Bard or one of the other defendants from February 21, 2003 through the present.[5]  Id. at ¶ 21.

## Bard v. Lexington Insurance Company

In the instant action, Bard seeks declaratory judgment from this Court that the Policy provides coverage for the claims asserted against it in the Southeast Missouri Action and asserts that Lexington's failure to provide such coverage constitutes a breach of contract. Bard initiated this action on April 23, 2007 in the Superior Court of New Jersey, Union County, Law Division, which Lexington subsequently removed to this Court on the basis of diversity jurisdiction on May 31, 2007.  In its complaint, Bard alleges that "[u]nder the terms of the Policy, Lexington is obligated to defend and indemnify Bard against the claims asserted in the Southeast Missouri Action." Complaint at ¶ 6.  Bard further alleges that Lexington has not agreed to defend and indemnify Bard against the claims asserted in the Southeast Missouri Action." Id. at ¶ 7.  Accordingly, the dispositive question of law before this Court, and which Lexington's proposed motion for summary judgment seeks to address, is one of strict policy interpretation, namely, whether the terms of the Policy issued to Bard afford coverage for the Southeast Missouri Action.

### A. **Bard's Coverage Turns On The Interpretation of "Personal Injury and Advertising Injury" As Defined In the Policy.**

Lexington's Commercial Excess Liability Policy, Policy Number 7412134 (previously defined as "the Policy"), was issued to Bard and effective for the period April 1, 2006 to April 1, 2007.  The Policy provides insurance of $50,000,000 in excess of applicable Retained Limits. The Policy plainly states that it affords coverage for "those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury**."[6]

The Policy defines **Personal Injury and Advertising Injury** as:

---

[5] The Amended Class Complaint also defines a Missouri sub-class for all residents of Missouri that otherwise fall within the definition of the nationwide class. Id. at ¶ 22.

[6] The Southeast Missouri Action does not seek damages for Bodily Injury or Property Damage.  See Amended Class Complaint.

Hon. Joseph Greenaway, J.S.C.
November 7, 2007
Page 4 of 6

> "injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:
>
> 1. false arrest, detention or imprisonment;
>
> 2. malicious prosecution;
>
> 3. the wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;
>
> 4. oral or written publication, in any manner, of material that slanders or libels a person or organization, disparages a person's or organization's goods, products or services;
>
> 5. oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> 6. the use of another's advertising idea in your **Advertisement**; or
>
> 7. infringement upon another's copyright, trade dress or slogan in your **Advertisement**."

The question of law for the Court, therefore, is whether the Policy's definition of "Personal Injury and Advertising Injury" encompasses the claims asserted against Bard in the Southeast Missouri Action. Resolution of this legal question is ripe for determination now without discovery and, moreover, is outcome determinative. In its motion, Lexington will assert that the Policy's definition of "Personal Injury and Advertising Injury" does not contemplate coverage for the alleged antitrust violations, or causes of action arising out of those violations, asserted against Bard. Because resolution of this significant legal question is dispositive to the outcome of the parties' dispute, the motion need not wait until the commencement or completion of fact discovery. Simply put, fact discovery has no impact on this purely legal question. In addition, early resolution of this issue will save the parties and the Court the time and expense of dealing with unnecessary discovery and litigation. Accordingly, Lexington respectfully requests leave to file its motion for summary judgment on or before November 21, 2007.

Hon. Joseph Greenaway, J.S.C.
November 7, 2007
Page 5 of 6

B.  **Lexington's Request To Stay Discovery Will Not Prejudice Either Party.**

If the Court is inclined to grant Lexington leave to file its proposed motion, Lexington respectfully requests an order staying all discovery until such time as the Court issues its ruling. The temporary stay would not unduly delay this proceeding, as discovery in this case is not scheduled to close until September 1, 2008.

More importantly, a temporary stay would save the parties and the Court the time and expense of engaging in needless discovery and related motion practice. On October 29, 2007, Bard served its first set of interrogatories and requests for production of documents on Lexington. As anticipated, Bard's document requests are extremely broad, invasive and clearly designed to mire Lexington in a discovery battle. In truth, much of the discovery sought is irrelevant to any determination of coverage under the Policy. No amount of discovery will alter the fact that as a matter of law, there is no coverage under the Policy for the claims asserted against Bard in the Southeast Missouri Action.

As stated above, Lexington's proposed motion for summary judgment is case dispositive. Lexington submits that its motion will avoid an unnecessary expenditure of time, as well as the costs associated with discovery. Furthermore, if Lexington is permitted to file its brief on or before November 21st, the motion should be fully briefed and submitted to the Court before the end of the calendar year absent any extension of time by Bard. Even if a ruling on Lexington's motion is deferred until January and discovery is correspondingly stayed, the parties would still have eight months to complete discovery under the existing Pretrial Scheduling Order, if necessary. Accordingly, neither party would be prejudiced by such a short delay.

In sum, Lexington respectfully requests permission to file a motion for summary judgment against the plaintiff Bard on or before November 21, 2007. Lexington further requests entry of an order staying discovery until such time as Lexington's motion for summary judgment is decided.

Hon. Joseph Greenaway, J.S.C.
November 7, 2007
Page 6 of 6

Thank you for your consideration of Lexington's request.

Respectfully yours,

s//
David N. Cohen

cc: Magistrate Justice Madeline Arleo (via facsimile 973.297.4906)
Jeffrey M. Pollock, Attorney for Plaintiff, C.R. Bard, Inc. (via electronic filing and express mail)
Jack Kolpen, Attorney for Plaintiff, C.R. Bard, Inc. (via electronic filing and express mail)

ORDERED, that Lexington Insurance Company shall file a motion for summary judgment on or before November 21, 2007 and that all discovery in this matter is stayed until this Court rules on Lexington's motion.

_____
Judge Joseph A. Greenaway, U.S.D.C.